UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-cv-21570-BLOOM

UNITED STATES OF AMERICA

    Plaintiff,

v.

MIAMI-DADE COUNTY, THE BOARD
OF COUNTY COMMISSIONERS, *et. al.*,

    Defendants.

_____/

**STIPULATED ORDER REGARDING APPOINTMENT OF
INDEPENDENT JAIL COMPLIANCE DIRECTOR**

**THIS CAUSE** is before the Court on Plaintiff's Joint Motion to Enter Stipulated Order Regarding Appointment of Independent Jail Compliance Director ("the Motion"), ECF No. [258-1]. The Court has reviewed the Motion, the record in the case, and is otherwise fully advised.

In 2013, Miami-Dade County and the Miami-Dade County Board of County Commissioners ("County"), the Miami-Dade Public Health Trust ("PHT"), and the United States of America (the "Parties") reached a Consent Agreement, ECF No. [1-5], and the County, the Miami-Dade Board of County Commissioners, and the United States of America reached a Settlement Agreement, ECF No. [85-1], to resolve allegations of unconstitutional conditions at the Miami-Dade Corrections and Rehabilitation Department ("MDCR") jail facilities. The Consent Agreement covers medical care, mental health care, and suicide prevention. ECF No. [1-5]. The Settlement Agreement covers protection from harm, fire and life safety, and inmate grievances. Settlement Agreement, ECF No. [85-1]. Together the Consent Agreement and the

Settlement Agreement are referred to as the "Agreements." On April 15, 2022, this Court ordered that if Defendants did not "achieve full compliance with the remaining provisions in the Consent Agreement and Settlement Agreement by November 18, 2022. . . , the United States shall file a statement regarding appropriate sanctions for the Court's consideration no later than December 2, 2022." ECF No. [243].

On December 16, 2022, this Court issued a Minute Order requiring the Parties to file "no later than December 21, 2022, the final proposed stipulated order and action plan steps to be presented for approval to the Board of County Commissioners . . . [and] a status report by February 10, 2023, regarding the approval of the stipulated order and action plan steps." ECF No. [254]. On December 21, 2022, the Parties filed an initial draft of the Final Proposed Stipulated Order Regarding Appointment of Independent Jail Compliance Director. ECF No. [255]. On February 10, 2023, the Parties filed another draft of the Final Proposed Stipulated Order, ECF No. [258-2] ("Final Proposed Stipulated Order"), and filed the instant Motion, requesting that the Court enter the Final Proposed Stipulated Order as an order of the Court.

The Court has reviewed the Motion, the record in this case, and is otherwise fully advised.

### I.   STIPULATED ORDER

The parties agree to the relief set forth below.

#### A. Background

1. Under the Miami-Dade County Home Rule Charter the County Mayor "shall be responsible for the management of all administrative departments of the County government and for carrying out policies adopted by the Commission." § 2.02(a), Miami-Dade County Home

Rule Charter ("Administrative Authority"). This includes, among other authority, "the power to issue and place into effect administrative orders, rules, and regulations" and to supervise "all administrative functions not otherwise specifically assigned to others by this Charter". *Id.* §§ 5.01, 5.02.

2. The County Mayor has appointed Mr. Gary Raney to act as the Compliance Director for the Agreements. The County Mayor has delegated to Mr. Raney the necessary Administrative Authority to lead compliance efforts at MDCR and to fulfill all outstanding provisions of the Agreements. Mr. Raney will have Administrative Authority over the department director of MDCR and directly report to the County Mayor. As the Compliance Director, Mr. Raney shall act as a representative of the County in communications and coordination with Corrections Health Service ("CHS") for the provision of services to MDCR inmates in accordance with the Consent Agreement. CHS shall communicate, collaborate, and cooperate with Mr. Raney as the Mayor's delegate.

3. The Compliance Director's contract with Miami-Dade County was approved by the Board of County Commissioners on January 17, 2023. *See* Resolution No. R-22-23. The contract may be amended by the Board from time to time as needed.

4. The Compliance Director was engaged and empowered at the recommendation of outgoing monitor Susan McCampbell for his expertise and knowledge in the subject area of jail reform and modern jail practices.[1]

5. Based on the assessment and advice of the Compliance Director, the County shall prioritize addressing issues which may result in inmate harm at the County jails, then prioritize

---

[1] Ms. McCampbell and medical monitor Dr. Robert B. Greifinger tendered their resignations on August 1, 2022, effective December 30, 2022.

compliance with the Agreements as they relate to potential for reducing harm to inmates at the County jails, and then prioritize any remaining compliance issues with the Agreements.

### B. Authority of the Compliance Director

1. The Parties have agreed to the appointment of Mr. Gary Raney as the Independent Compliance Director until at least October 31, 2023, when substantial compliance with the Agreements will be achieved. At that time, the Parties shall confer on the retention and responsibilities of a Compliance Director during the period of sustaining compliance as set forth in the Agreements and shall submit any proposed amendments to this Stipulated Order to the Court as may be required.

2. The Compliance Director shall oversee the operations of MDCR in a manner that is professional and consistent with generally accepted correctional management, accounting, and personnel standards. Any Party may petition the Court for the Compliance Director's removal for good cause and the other Parties will have the opportunity to respond. "Good cause" for these purposes shall include, but not be limited to, neglect of duties; willful misconduct; inappropriate personal relationship with any Party or Monitor; conflict(s) of interest; or any criminal conduct during the pendency of the appointment.

3. In the event the Compliance Director is removed for good cause, is removed at the County Mayor's discretion, or the position otherwise becomes vacant, the County shall immediately notify all Parties, the Monitor, and the Court of such vacancy. The County Mayor shall expeditiously appoint a replacement Compliance Director, subject to the consent and approval of the United States, and inform the Court of the appointment of such replacement Compliance Director. The Compliance Director shall have the full Administrative Authority to ensure that MDCR is operated in a manner to protect incarcerated persons from harm and achieve substantial

compliance with each provision of the Agreements on a timely basis. The Compliance Director shall hold and exercise Administrative Authority with respect to the custody, care, and supervision of people incarcerated by MDCR. The Compliance Director shall oversee MDCR operations related to the Agreements. The Compliance Director shall be responsible for implementing the Agreements, and any other remedial orders that may be entered by the Court with respect to MDCR including, but not limited to, restructuring day-to-day operations at MDCR. To this end, the Compliance Director shall have the necessary Administrative Authority over all administrative, personnel, contractual, and other operational functions for MDCR relating to compliance with Agreements as set forth herein.

4. The Compliance Director shall have the Administrative Authority to direct personnel actions, including, but not limited to, the authority to direct hiring, firing, suspension, supervision, promotion, transfer, and disciplinary actions, regarding MDCR employees or MDCR contract employees related to the operation of MDCR. The Compliance Director shall also have the Administrative Authority to establish administrative personnel policies and positions related to the administration and operation of MDCR and to the extent necessary to obtain compliance with the Agreements.

5. The Compliance Director shall have the Administrative Authority to negotiate new MDCR contracts and agreements and to renegotiate existing MDCR contracts and agreements, in the event that such action is necessary for the Compliance Director to fulfill the duties under this Order.

6. The Compliance Director shall have full Administrative Authority to direct specific actions at MDCR to attain and sustain substantial compliance levels, or remedy compliance errors, regarding all portions of the Agreements, including but not limited to: (a) changes to

MDCR policies or standard operating procedures or practices; (b) MDCR personnel decisions, including but not limited to engagement of consultants (as set forth above), assignments, internal MDCR findings and disciplinary actions in misconduct cases and use-of-force reviews, and the discipline or demotion of staff; and (c) maintaining or eliminating MDCR programs or initiatives related to or affecting Consent or Settlement Agreement tasks or objectives. The Compliance Director shall have full Administrative Authority to direct MDCR staff on all outstanding tasks and issues related to compliance with the Agreements and the overall objectives of the Agreements.

7. To exercise these powers, the Compliance Director shall be onsite at MDCR with sufficient frequency, regularity, and duration to implement the Agreements and any other orders of the Court.

8. The Compliance Director shall, at his or her discretion, or at the request of the Court, the Monitor, or the United States, develop a corrective action plan for any task for which the Monitor finds MDCR to be out of compliance with the Agreements. If the Compliance Director disagrees with a finding of non-compliance, by motion the County may request a status conference to seek resolution and guidance by the Court. As part of any such corrective action plan, the Compliance Director shall determine the nature and frequency of MDCR's future internal compliance assessments for that task.

9. The Compliance Director will have the full Administrative Authority to review, investigate, and take corrective action regarding MDCR policies, procedures, and practices that are related to Agreements, and any future Court Orders in this case.

10. Notwithstanding any other provision herein, the Compliance Director shall exercise their powers and any authority described in this Stipulated Order, in a manner consistent with

applicable federal, State, and local laws, regulations, and contracts, including, but not limited to, collective bargaining agreements (together "General Legal Requirements"). In the event, however, that the Compliance Director finds that General Legal Requirements or other third-party action or inaction is preventing them from carrying out the Court's Orders, the Compliance Director shall notify the Parties and try to resolve the issue, communicating with any third parties, including state officers and other state or local agencies, as necessary. If the Compliance Director is still unable to resolve the issue, the Compliance Director shall notify the Parties, and any Party may notify the Court and request appropriate action. If the Court, upon an opportunity for hearing from all Parties, determines that the third party is unlawfully preventing implementation of constitutionally required remedies, the Court may grant additional, appropriate relief.

### C. Duties of the Compliance Director

1. The Compliance Director shall, within 14 days of the date of this Stipulated Order, develop a detailed Plan of Action ("the Plan") designed to address any alleged unconstitutional conditions of confinement and compliance with the Agreements. The Plan shall include timelines for all specified remedies, indicating the responsible individuals and steps for implementation. The Compliance Director shall develop the Plan with the assumption that substantial compliance for all provisions of the Agreements can be obtained by October 31, 2023.

2. The Plan shall be consistent with the Agreements and include, but not be limited to, the following:

> a. How the County will (a) conduct an inmate bed and classification analysis to ensure the Jail has adequate beds for maximum security and disciplinary segregation of inmates, and (b) implement a plan to address the results of the analysis. The Compliance Director will work with the Monitor to conduct an

      annual review to determine whether MDCR's objective classification system continues to accomplish the goal of housing inmates based on level of risk and supervision needs.

b. How the County will accomplish a reduction in inmate-on-inmate violence in each MDCR Jail facility on a quarterly basis. If reductions in violence do not occur, the Plan shall address how MDCR shall demonstrate that its systems for minimizing inmate-on-inmate violence are operating effectively.

c. How the County will develop and implement policies, protocols, trainings, and audits consistent with the requirements of the Prison Rape Elimination Act of 2003, 42 U.S.C. § 15601, et seq., and its implementing regulations, including those related to the prevention, detection, reporting, investigation, data collection of sexual abuse, including inmate-on-inmate and staff-on-inmate sexual abuse, sexual harassment, and sexual touching.

d. How the County will develop and implement measures to self-monitor and take corrective action to ensure compliance with constitutional mandates in addition to the review and assessment of the provisions of the Consent and Settlement Agreements on a quarterly basis. Such measures shall include developing and implementing corrective action plans within 30 days of each quarterly review, including changes to policy and changes to and additional training. On at least a quarterly basis, the Compliance Director and command staff shall also review data concerning inmate safety and security to identify and address potential patterns or trends resulting in harm to inmates in the areas of supervision, staffing, incident reporting, referrals, investigations, classification, and grievances. The review

      shall include the following information:

        i. documented or known injuries requiring more than basic first aid;

        ii. injuries involving fractures or head trauma;

        iii. injuries of suspicious nature (including black eyes, injuries to the mouth, injuries to the genitals, etc.);

        iv. injuries that require treatment at outside hospitals;

        v. self-injurious behavior, including suicide and suicide attempts;

        vi. inmate assaults; and

        vii. allegations of employee negligence or misconduct.

e. The Compliance Director will provide to the United States and the Monitor bi-annual reports regarding the below items:

        i. Total number of inmate disciplinary reports;

        ii. Safety and supervision efforts. The report will include:

          1. a listing of maximum-security inmates who continue to be housed in dormitory settings;

          2. a listing of all dangerous contraband seized, including the type of contraband, date of seizure, location and shift of seizure; and

          3. a listing of inmates transferred to another housing unit because of disciplinary action or misconduct.

        iii. Staffing levels. The report will include:

          1. a description of each post and position needed at the Jail;

          2. a listing of the number of vacant sworn positions;

    3. a listing of the number of overtime hours per month being used to operate the jail, including officers and supervisors.

   iv. Reportable incidents. The report will include:

    1. a brief summary of all reportable incidents, by type and date;

    2. data on inmates-on-inmate violence and a brief summary of whether there is an increase or decrease in violence;

    3. a brief summary of whether inmates involved in violent incidents were properly classified and placed in proper housing;

    4. number of reported incidents of sexual abuse, the investigating entity, and the outcome of the investigation;

    5. a description of all suicides and in-custody deaths, including the date, name of inmate, and housing unit;

    6. number of inmate grievances screened for allegations of misconduct and a summary of staff response; and

    7. number of grievances referred to IA for investigation.

 f. How the County will develop and implement written Quality Improvement policies and procedures and strategies to identify and address serious deficiencies in protection from harm and to assess and ensure compliance with the terms of the Consent and Settlement Agreements on an ongoing basis.

3. The Compliance Director shall send the Plan to the Parties for comment, and the Parties may submit comments to the Compliance Director within 21 days after receipt of the Plan. The Compliance Director will then submit the final Plan to the Court within 14 days after receiving any comments from the Parties. The Compliance Director shall update and/or modify this Plan

as necessary and file updated versions with the Court. Pending development of the Plan, the Compliance Director shall undertake short-term or interim measures designed to immediately improve the conditions of confinement at MDCR and begin the process of implementing the Court's orders.

4. The Compliance Director will work closely and communicate regularly with the Mayor of Miami-Dade County, the United States, the Monitor, and Defendants, including MDCR and CHS staff, to develop and implement the Plan.

5. The Compliance Director is responsible for drafting and filing a Self-Assessment Report on a quarterly basis. The Self-Assessment Report shall describe the progress with each provision of the Compliance Director's Plan of Action, including the implementation status of the Agreements, as well as every court-ordered remedy. Additionally, this Self-Assessment Report shall identify any barriers to progress, any corrective action taken by the Compliance Director to address inadequate progress, and any other matters deemed relevant by the Compliance Director. In addition to these written reports filed with the Court, the Compliance Director will report on their efforts, progress and challenges in open court at each Court status conference and shall communicate through written filings with the Court throughout the duration of the Compliance Director's appointment on an as-needed basis.

### D.  General Provisions Regarding the Compliance Director

1. The Compliance Director, including any staff or consultants of the Compliance Director, shall have unlimited access to all MDCR records and files (paper and electronic), including all institutional, personnel, financial, and detainee records, and access to all CHS and contractor records and files (paper and electronic), including all institutional, personnel, financial, and detainee records for which MDCR or CHS would otherwise have access as deemed necessary by

the Compliance Director to carry out the duties set forth in this Order. The Compliance Director, and Compliance Director consultants and staff as authorized by the Compliance Director, shall have unlimited physical access to MDCR jail facilities and documents. The Compliance Director, and Compliance Director consultants and staff, shall not need to give notice before entering MDCR jail facilities. The Compliance Director, and the Compliance Director consultants and staff as authorized by the Compliance Director, shall have unlimited communications access to detainees, detention officers, MDCR managers, medical and mental health staff, and maintenance staff. This access includes access the County may have to any medical, mental health, and maintenance staff of CHS, and any contractors subject to any conditions placed upon the County on such access. All access provided in this provision shall be subject to any restrictions that would otherwise be placed on MDCR or CHS.

2. The Compliance Director shall not be retained as a consulting or testifying expert by any current or future litigant or claimant in a claim or lawsuit against Miami-Dade County ("the County), MDCR, CHS, the Mayor, or their employees in a jail conditions-related claim or similar related claim, but shall be required to testify only in this matter if called by any Defendant or the Court.

3. Nothing in this Stipulated Order shall be interpreted to limit or deny the Parties' pre-existing rights of access, discovery rights, or other rights under the Federal Rules of Civil Procedure. The Parties will each retain their rights of access to documents, detainees, staff, and MDCR, and all other rights under the Agreements.

4. Nothing in this Stipulated Order shall be deemed to waive any Defendant's right to file, at the appropriate time, a motion to terminate prospective relief pursuant to 18 U.S.C. § 3626(b)(1) and nothing in this Stipulated Order shall be deemed to limit any Defendant's right

to challenge the compliance ratings, findings, and/or allegations of any Monitor. The United States and the Monitor and the Monitor's team have the right to communicate directly, *ex parte*, with the Compliance Director. All *ex parte* discussions with the Compliance Director under this Paragraph shall be limited to facts, data and opinions related to conditions at the jail and shall not bind the County, CHS or the Public Health Trust and such discussions shall not be admissible in any proceeding regarding the Agreements.

5. Given that the Compliance Director position is significant in its scope and dimension, the Court finds that flexibility will be an important element in ensuring its effectiveness. Accordingly, this Stipulated Order may be modified with approval of the Court.

### E.  Ongoing Role of the Court Monitor

Nothing in this Order alters the responsibilities and duties of the Monitor.

### F.  Termination of Certain Provisions of the Consent Agreement

1. The Consent Agreement at Section VII.C. specifically provides for separate and independent termination of individual substantive provisions of the Agreement if Defendants reach and maintain substantial compliance for eighteen (18) months, i.e., maintain sustained substantial compliance.

2. The Parties have advised the Court that the following provisions of the Consent Agreement have reached and maintained substantial compliance for at least eighteen (18) months and therefore have achieved sustained compliance: Subsections: III.A.6. Discharge Planning and III.C.5. Mental Health Care Housing.

3. The Parties agree that the Bi-annual reporting requirements set forth in Section III.D.2. of the Settlement Agreement shall be suspended while the Compliance Director position is in effect as duplicative of the reporting requirements set forth in this Stipulated Order.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Joint Motion to Enter Stipulated Order Regarding Appointment of Independent Jail Compliance Director, **ECF No. [258-1]**, is **GRANTED**.

2. The relief set forth above is **GRANTED**.

3. This Order shall bind all parties in the conduct of this proceeding.

4. The following provisions of Consent Agreement are **TERMINATED**:

    a. Subsection III.A.6. Discharge Planning;

    b. Subsection III.C.5. Mental Health Care Housing;

5. Subsection III.D.2 of the Settlement Agreement is **SUSPENDED** while the Compliance Director position is in effect.

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 15, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record